UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ZOYA COMPANY** <br> 5060 Taylor Road <br> Bedford Heights, OH 44128 <br><br> and <br><br> **ART OF BEAUTY INC.,** <br> 5060 Taylor Road <br> Cleveland, Ohio 44128, <br><br> Plaintiffs, <br><br> vs. <br><br> **JULEP NAIL PARLOR COMPANY**, <br> P.O. Box 19523, <br> Seattle, Washington 98109 <br><br> Defendant. | Case No. <br><br> Judge <br><br> **Complaint** <br><br> **Jury Demand Endorsed Hereon** |

For its complaint against defendants Julep Nail Parlor Company, plaintiffs Zoya Company and Art of Beauty, Inc. state:

### Summary of Case

1. Zoya Company and Art of Beauty, Inc. (collectively "Zoya" or "Plaintiffs") sell cosmetics and spa related products including nail polishes.

2. Over the last 25 years, Zoya has grown from a local Cleveland-based company to become an industry leader and has gained a reputation in the market for its high quality beauty products including its nail polishes.

{2855002:}

3. As part of its efforts to brand, market, and sell its wide assortment of nail polish colors, Zoya brands individual nail polish colors with certain distinctive female names.

4. Based on its many years of use and customer recognition, Zoya owns the exclusive trademark rights to those female names.

5. Rather than establish its own reputation in the market, Julep Nail Parlor Company ("Julep") – a newcomer to the cosmetic and nail polish industry – copied Zoya's female names and used them to sell its competing nail polish products.

6. Julep's use of the same trademarks as Zoya on the same products is likely to cause consumer confusion that Zoya is the source of such products.

7. In fact, Julep sells some of Zoya's products through its website.

8. Julep had knowledge of Zoya and its products and intended to copy Zoya's trademarks given Zoya's success in using its trademarks on nail polishes and given the infinite number of names available to Julep.

9. To prevent any consumer confusion and irreparable harm that Julep is inflicting on Zoya, Zoya asks the Court to order Julep to stop using confusingly similar trademarks to Zoya's trademarks and to grant the other requested relief.

## The Parties

10. Plaintiffs are two related Ohio corporations with their principal place of business in Cleveland, Ohio. Art of Beauty operates as a distributor of Zoya's products.

11. Julep Nail Parlor Company ("Julep") is a Washington corporation with its principal place of business in Seattle, Washington.

## Jurisdiction and Venue

12. This Court has subject matter jurisdiction over Zoya's Lanham Act claim under 35 U.S.C. §§ 1331 and 1338 because it arises under federal law.

13. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs.

14. This Court also has supplemental subject matter jurisdiction over Zoya's claims that do not arise under federal law under 28 U.S.C. §§ 1367, 1338(b), and 15 U.S.C. § 1121 because those claims are so related to Zoya's Lanham Act claim that together the claims are part of the same case or controversy under Article III.

15. This Court has personal jurisdiction over the Defendant pursuant to the provisions of the Ohio Long Arm Statute, O.R.C. § 2307.382, and the laws of the United States. Defendant maintains an interactive website through which residents of Ohio can and do make purchases of infringing products. Defendant offers for sale, sells, and ships products into the Northern District of Ohio, including products that infringe Zoya's trademarks. Upon information and belief, Defendant derives substantial revenue from activities within this state and Judicial District, and has sold a substantial amount of products into this state and Judicial District, either directly or through its interactive website.

16. Venue is proper under 28 U.S.C. § 1391 because Julep is subject to personal jurisdiction in this district under Ohio law and, therefore, "resides" in the Northern District of Ohio according to federal law.

## Relevant Facts

17. Zoya has developed and sold cosmetics including nail care products such as nail polishes and clear coats since 1986.

18. After immigrating to the United States from the Ukraine, the classically trained pianist, Zoya Reyzis put her music career on hold and earned her Cosmetology license. In the mid 1980's, Ms. Reyzis worked as a nail technician at the salon she opened with her husband Michael. Ms. Reyzis soon recognized a need for improved nail care products. Responding to that need, Michael Reyzis developed a fast drying topcoat, and soon began developing environmentally friendly, toxin free nail polishes.

19. Zoya's products became a stunning success in the market. Since 1992, Zoya has sold millions of cosmetic products including its nail polishes using female names both domestically and internationally. Based on the success of its products, Zoya has devoted substantial time, money, and effort to promote, market, and sell its cosmetics and nail care products.

20. Zoya promotes, markets, and sells its products through high end beauty salons, spas, and resorts, as well as through its websites artofbeauty.com and zoya.com.

21. Zoya markets and sells its nail care products under a variety of trademarks including the federally registered trademark ZOYA.

22. Zoya currently offers for sale over 400 different colors of nail polishes. Zoya markets and sells its nail polishes by branding each color with, and using as a trademark thereon, a distinctive female name. Zoya has used such trademarks since 1992 in promoting, facilitating, and making sales of its nail polishes.

23. For many years, Zoya has owned and successfully used female names to identify colors for nail polishes including, but not limited to, the following names: AMANDA, ANGELINA, ANNE, CARRIE ANN, CHARLOTTE, CHRISTINA, DEMI, DREW, ELLEN, EMANUELLE, GLORIA, GWENETH, HEIDI, HELEN, JULIETTE, KATE, KELLY, KIMMY, LINDSAY, LUCY, MICHELLE, NATALIE, NICOLE, PENELOPE, PIPPA, REECE, SALMA, SIENNA, STELLA, STEPHANIE, VANESSA, and WITNEY, (individually "Mark" and collectively "the Marks").

24. Since 1992, Zoya has sold millions of bottles of nail polish using female names, including the Marks, both domestically and internationally.

25. Since 1992, Zoya has invested substantial money and other resources marketing, advertising, and promoting nail polishes using female names, including the Marks.

26. Zoya owns and has the exclusive right to use the Marks in connection with the sale of nail polish by virtue of its development, creation, and continuous and exclusive use and the timing thereof.

27. Zoya sells its nail polish throughout the United States and internationally.

28. Zoya's customers associate female names with nail polish colors, including the Marks, with Zoya's high quality services and goods as illustrated by the following statements:

- "So you know Zoya names all their nail polish after women . . . I used a base of Zoya Get Even, 2 coats of Alegra and a top of Zoya Armor. Formula was Superb." Ex. 1.

- "I just fancy how Zoya names their shades similar to a plain Jane . . . It develops a bond with their owners, IMO. Makes life easier right? You just say, 'Where's my Robyn?' Instead of 'Anybody seen my aqua blue nail polish shade?'" Ex. 2.

- "Zoya nail polish retails for $8.00. It's a nail polish free of toluene, formaldehyde, DBP (phthalates) and camphor. . . . By the way, Zoya names their nail polishes with female names. ..Do they have a nail polish with your name?" Ex. 3.

- "I love the fact that all the polishes are named after women! The wear of the polishes, from my experience, are long lasting and are pretty opaque." Ex. 4.

- "I love Zoya polishes because: 1. Color range – they have more unique colors than any other salon brand. 2. Names – never cliché or too 'cutesy,' plus giving a friend a polish named after them has saved me from many a gift-giving crisis! 3. Availability – they keep all of their collections available online! I can't rave about that enough." *Id.*

- "Ooooh! I love the names; I know it's silly, but I'm a sucker for a good name on a polish." *Id.*

29. Consumers associate the name of a nail polish color with the source of the product. *See, e.g.,* Ex. 3 ("By the way, Zoya names their Nail polishes with female names.").

30. Further, knowing that Zoya is the source of high quality nail polishes with female names, consumers identify the nail polish and make purchasing decisions based on the name itself as illustrated by the following statements:

- "I used . . . 2 coats of Alegra." Ex. 1.

- "I only have 3 Zoya's from their Twitter promotion. I have Midori, Vegas Freeze, and Trixie . . . Midori is gorgeous . . . I am looking for a swatch of 'Jennifer' since that is my name." Ex. 5

- "Nice shades on you. I like Tasha but the other two aren't my style. I do love Zoya's polish. A nice big collection of shades for everyone." *Id.*

31. In 2011, Zoya became aware that Julep was using names and trademarks in association with nail polishes that are the same as or confusingly similar to Zoya's use of names to identify nail polish colors, including the Marks.

32. Zoya and Julep are direct competitors for nail polish sales.

33. Julep copied Zoya's Marks and uses them on the same goods – nail polishes – as does Zoya.

34. In copying Zoya's female names, including the Marks, Julep has gone so far as to use Zoya's Marks in connection with the same or confusingly similar nail polish colors. For example, as does Zoya, Julep uses Zoya's SALMA mark on a red nail polish:

**Zoya's SALMA Red Nail Polish**



**Julep's Salma Red Nail Polish**



As another example, Zoya uses the mark GWENETH on a red nail polish, and Julep uses the confusingly similar name Gwen on a red nail polish:

{2855002:}  8

**Zoya's GWENETH Red Nail Polish**



**Julep's Gwen Red Nail Polish**



35. Julep sells its products in the same channels of trade as Zoya's Marks.

{2855002:}                                9

36. Zoya has notified Julep in writing that Julep infringes Zoya's Marks and asked Julep to cease and desist using the confusingly similar Marks.

37. Despite Zoya's efforts, Julep has, with willful knowledge of Zoya's rights, rejected Zoya's demands and continues to use Zoya's Marks in a manner calculated to confuse or deceive the public as to the source of Defendant's goods or to cause a false belief that Julep is associated with Zoya.

## Count One

### *Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)*

38. Zoya incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

39. The Marks are valid and legally enforceable.

40. Zoya owns the Marks.

41. Zoya's Marks are distinctive in the marketplace and have acquired secondary meaning because it identifies Zoya as the source of the products to purchasers, users, and others in the relevant channels of distribution throughout the United States. Customers and purchasers have come to associate the Marks with Zoya through any of Zoya's longtime, continuous and exclusive use of the Marks, Zoya's extensive advertising or sales. That the Marks are distinctive and have acquired secondary meaning in the marketplace is demonstrated by Julep's intentional copying of the Marks.

42. Julep has sold, through the internet and in salons, products using the same or confusingly similar names in connection with the same goods as Zoya. Julep's actions constitute use in interstate commerce of Zoya's Marks.

43. Julep's use of Zoya's Marks infringes Zoya's Marks and is likely to cause confusion, mistake, or deception as to: (1) the source, sponsorship, or approval of Julep's goods, services, or commercial activity by Julep, or (2) Julep's affiliation, connection, or association with Zoya in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

44. Julep's infringement has been willful and deliberate, with intent to trade upon the substantial goodwill associated with Zoya's Marks.

45. As a direct and proximate result of Julep's infringement, Zoya has suffered damages in an amount exceeding $75,000, while Julep has made and will continue to make revenue to which it is not entitled.

46. The goodwill of Zoya's business under its Marks is of great value, and Zoya will suffer irreparable harm if Julep's infringement is allowed to continue. Such harm will continue unless enjoined by this Court.

## Count Two

### *Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.01 et seq.*

47. Zoya incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

48. Julep's use of Zoya's Marks and similar names in connection with nail polishes, its internet website, and advertisements, either individually or in the

aggregate, are an effort by Julep to pass off its goods as originating from or sponsored by Zoya. *See* Ohio Rev. Code § 4165.02(A)(1).

49. Julep's use of Zoya's Marks and similar names in connection with nail polishes, its internet website, and advertisements, either individually or in the aggregate, cause a likelihood of consumer confusion and misunderstanding as to the source, sponsorship, or approval of Julep's goods and services. *See* Ohio Rev. Code § 4165.02(A)(2).

50. Julep's use of Zoya's Marks and similar names in connection with nail polishes, its internet website, and advertisements, either individually or in the aggregate, cause a likelihood of consumer confusion and misunderstanding as to the affiliation, connection, or association with Zoya. *See* Ohio Rev. Code § 4165.02(A)(3).

51. Julep's use of Zoya's Marks and similar names in connection with nail polishes, its internet website, and advertisements, either individually or in the aggregate, are representations that Julep's goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have. *See* Ohio Rev. Code § 4165.02(A)(7).

52. Julep's use of Zoya's Marks and similar names in connection with nail polishes, its internet website, and advertisements, either individually or in the aggregate, are representations that Julep has the sponsorship or approval of, and affiliation or connection with Zoya, which it does not have. *See* Ohio Rev. Code § 4165.02(A)(7).

53. Julep's violation of the Ohio Deceptive Trade Practices Act was, and is, willful.

54. Julep's violation of the Ohio Deceptive Trade Practices Act entitles Zoya to monetary and injunctive relief under § 4165.03.

55. As a direct and proximate result of Julep's deceptive trade practices, Zoya has suffered damages in an amount exceeding $75,000.

56. As a direct and proximate result of Julep's deceptive trade practices, Zoya has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## Count Three

### *Unfair Competition*

57. Zoya incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

58. Julep's deceptive and infringing acts are unfair competition in violation of the common law of Ohio.

59. As a direct and proximate result of Julep's unfair competition under Ohio common law, Zoya has suffered damages in an amount exceeding $75,000.

## Count Four

### *Unjust Enrichment*

60. Zoya incorporates by reference all allegations in all preceding paragraphs of this Complaint as if fully rewritten herein.

61. Through its deceptive and infringing conduct, Julep has obtained benefits, including sales and goodwill that rightfully belong to Zoya.

62. Julep has not compensated Zoya for the benefits that Julep wrongfully obtained, despite justice and equity requiring it to do so.

63. Julep has unjustly enriched itself by obtaining and retaining the ill-gotten benefits of its deceptive and infringing conduct.

64. Julep's receipt of the benefits of its deceptive and infringing acts is unjust enrichment.

65. As a direct and proximate result of Julep's unjust enrichment, Zoya has suffered damages in an amount exceeding $75,000.

66. As a direct and proximate result of Julep's unjust enrichment, Zoya has suffered, and will continue to suffer, irreparable harm. Such harm will continue unless enjoined by this Court.

## Prayer for Relief

WHEREFORE, Zoya prays for judgment against Julep as follows:

1. Compensatory and statutory damages in excess of $75,000, with the exact amount to be determined at trial, plus interest.

2. Attorneys' fees.

3. Punitive and treble damages.

4. Costs of the action.

5. Injunctive relief barring Julep from:

   A. Using the Marks or any variation that bears a confusing similarity to Zoya's Marks in connection with manufacturing, distributing, selling, offering for sale, holding for sale, or advertising any goods or services.

  B.  Otherwise infringing Zoya's intellectual property rights in the Marks;

  C.  Otherwise engaging in any deceptive trade practice; or

  D.  Otherwise unfairly competing with Zoya.

6. An order that Julep immediately remove all references to the Marks and any variation thereof that bears a confusing similarity to the Marks from Julep's internet website, from any other internet publication relating to Julep's goods or products, and from any signs, documents, advertisements, products, packaging, or labels.

7. An order that Julep account to Zoya for any and all profits derived by Julep by reason of Julep's acts as complained of herein.

8. An order that Julep deliver up for destruction all signs, documents, advertisements, packaging, labels, products, and any other matter bearing words the same as Zoya's Marks and any variation thereof that bears a confusing similarity to Zoya's Marks.

9. Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

            Respectfully Submitted,

              s/ David B. Cupar
            David B. Cupar (OH 0071622)
             *dcupar@mcdonaldhopkins.com*
            Matthew J. Cavanagh (OH 0079522)
             *mcavanagh@mcdonaldhopkins.com*
            Scott M. Slaby (OH 0076610)
             *sslaby@mcdonaldhopkins.com*
            MCDONALD HOPKINS LLC
            600 Superior Avenue, East, Ste. 2100
            Cleveland, Ohio 44114
            T 216.348.5400
            F 216.348.5474

            *Counsel for Zoya Company and*
            *Art of Beauty, Inc.*

**<u>Jury Demand</u>**

Plaintiff Zoya Sales, Inc. hereby demands a jury trial for all issues so triable.

                           <u>s/ David B. Cupar</u>
                           *Counsel for Zoya, Inc*

{2855002:}