UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


Zoya Company, et al.,           )      Case No. 1:11-cv-1702
                                )
              Plaintiffs,       )      Judge Polster
                                )
        vs.                     )
                                )
Julep Nail Parlor Company,      )
                                )
              Defendant.        )


**Plaintiffs' Memorandum In Opposition**
**To Julep's Motion To Dismiss For Lack Of Personal Jurisdiction**

# Table Of Contents

Table Of Authorities ....................................................................................................... ii

Issue Statement ............................................................................................................... ii

Summary Of Argument ................................................................................................... iii

Law And Argument .......................................................................................................... 1

   I.   Julep Waived Its Personal Jurisdiction Defense ..................................................... 1

   II.  Regardless Of Waiver, This Court Has Personal Jurisdiction .......................................... 2

      A.  Zoya Need Only Make A *Prima Facie* Jurisdictional Showing .................................. 2

      B.  Four Separate Subsections Of Ohio's Long-Arm Statute Are Satisfied ................... 3

         1.  Section (a)(1) Of The Long-Arm Statute Is Satisfied .......................................... 3

         2.  Section (a)(2) Of The Long-Arm Statute Also Is Satisfied ................................. 4

         3.  Section (a)(3) Of The Long-Arm Statute Also Is Satisfied ................................. 5

         4.  This Trademark Case "Arises Out Of" Julep's Infringing Sales ......................... 5

      C.  Exercising Personal Jurisdiction Does
           Not Violate Julep's Due Process Rights ............................................................ 6

         1.  The Constitutional Touchstone Is "Minimum Contacts" ..................................... 6

         2.  Julep's Ohio Sales And Its Interactive Website Are Purposeful Availment ......... 7

         3.  Julep Causing Tortious Harm In Ohio Also Is Purposeful Availment ............... 10

         4.  Zoya's Suit Arises From Julep's Ohio Contacts ............................................... 11

         5.  Exercising Personal Jurisdiction Over Julep Is Reasonable .............................. 11

   III. Julep's Products Entered Ohio By Its Deliberate Choice to Sell to Ohio Residents ....... 12

   IV. Julep's "*De Minimis* Sales" Theory Is Contrary To Law ............................................. 15

   V.  The Cases Cited By Julep Are Unavailing .................................................................. 16

Conclusion ...................................................................................................................... 18

# Table Of Authorities

## Cases

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544 (6th Cir. 2007) ........................ 2

*Am. Eyewear, Inc. v. Peeper's Sunglasses & Access., Inc.*,
106 F. Supp. 2d 895 (N.D. Tex. 2000) ................................................. 15

*Am Greetings Corp. v. Cohn*, 839 F.2d 1164 (6th Cir. 1988) ................................... 11

*Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.*,
No. C-2-99-1190, 2000 WL 1810478 (S.D. Ohio Sept. 12, 2000) ...................................... 10, 12

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) .................. vi, 6

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002) ............................................. 12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ...................................... 3

*Cadle Co. v. Schlichtmann*, 123 Fed. Appx. 675 (N.D. Ohio 2004) ........................... 18

*Calder v. Jones*, 465 U.S. 783 (1984) ..................................................... 10, 17

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) ..................... vi

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ................... 6

*Clark v. Connor*, 82 Ohio St.3d 309 (1998) ................................................ 4

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996) ....................... v, 2-3, 6, 11-12, 15

*Davis v. Spriggs*, 2010 WL 4881491, 2010-Ohio-5802 (Ohio App.) ......................... 17

*Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998) .................. 3

*Epic Communs., Inc. v. Progressive Communs., Inc.*,
No. 1:07CV3243, 2008 WL 1930419 (N.D. Ohio Apr. 30, 2008) ............................ 16

*Gather, Inc. v. Gatheroo, LLC*, 443 F. Supp. 2d 108 (D. Mass. 2006) ...................... 6, 12, 15

*Gerber v. Riordan*, 649 F.3d 514 (6th Cir. 2011) ......................................... 1-2

*Goldstein v. Christiansen*, 70 Ohio St. 3d 232 (1994) .................................... 3

*Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*,
587 F. Supp. 983, 987 (N.D. Ohio 1984) ............................................................ 4

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................... 6

*JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363 (S.D. Fla. 1999) ................ 13

*Kauffman Racing Equip, L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551 (2010) ......... 10

*Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73 (1990) .................. 3

*Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506 (6th Cir. 2006) .................................... 16-17

*Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) ........................................... 10

*Mattel, Inc. v. Adventure Apparel*, No. 00 CIV. 4085(RWS), 2001 WL 286728
(S.D.N.Y. Mar. 22, 2001) ................................................................... 8, 15

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) ............................................... v, 15

*McGill Tech Ltd. v. Gourmet Techs., Inc.*, 300 F. Supp. 2d 501 (E.D. Mich. 2004) ................ 18

*Morel Acoustic, Ltd. v. Morel Acoustics USA, Inc.*,
No. 3:04-cv-348, 2005 WL 2211306 (S.D. Ohio, Sept. 7, 2005).......................3, 6-7, 10-11, 15

*NCR Corp. v. PC Connection, Inc.*, 384 F. Supp. 2d 1152 (S.D. Ohio 2005).............................. 8

*Nat. City Bank v. Yevu*, 178 Ohio App.3d 382, 2008-Ohio-4715 ............................................. 16

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002)............ 5, 7-9, 11, 15, 17

*Ohio, ex .rel. DeWine v. GMAC Mortgage LLC*,
No. 10CV2537, 2011 WL 1884543 (N.D. Ohio May 18, 2011)................................................. 3

*Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002).................................. 10

*Smith v. GAF Corp.,* 583 F. Supp. 1101 (S.D. Ohio 1984) ..................................................... 12

*Solar X Eyewear, LLC v. Bowyer*,
No. 1:11-cv-00763, 2011 WL 3418306 (N.D. Ohio Aug. 4., 2011) ...................................... 5, 10

*Sports Authority Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806 (E.D. Mich. 2000) ............... 8

*Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074 (C.D. Cal. 1999) ......................................... vi, 8

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)...................................... 12-13

*Young Again Prods., Inc. v. Acord*, 307 F. Supp. 2d 713 (D. Md. 2004)............................... 8, 15

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1199 (W.D. Pa. 1997) ............ 7, 10, 12-13

**<u>Statutes</u>**

R.C. 2307.382.................................................................................................................... 3-6

## Issue Statement

Personal jurisdiction over a trademark case exists when an out-of-state defendant sells goods, regardless of quantity, in the forum state that bear the allegedly infringing marks. Maintaining an interactive website used by forum residents and causing trademark infringement harm in the forum also will give rise to personal jurisdiction over a non-resident. Here, Julep Nail Parlor Company admits that it repeatedly sold the nail polish at issue in this trademark case in Ohio. And it admits to maintaining an interactive website used by Ohio customers to place orders. In addition, the plaintiffs – the trademark owners – are Ohio companies, so the tortious harm caused by Julep's infringement occurs entirely in Ohio. Given that, does this Court have personal jurisdiction to hear this trademark case, enjoin Julep's infringing sales, and grant relief to plaintiffs?

## Summary of Argument

Zoya Company and Art of Beauty Inc. (collectively, "Zoya") owns trademarks to distinctive female names which it uses to sell a variety of nail polish products. Julep, a newcomer to the national nail polish market, copied Zoya's trademarks for its competing nail polishes: an act of trademark infringement. Julep admits that it sells the "accused nail polishes" in Ohio and in other states through its online store. Julep, however, argues that this Court has no power to stop it from selling its nail polishes in Ohio, even if their names infringe Zoya's trademarks, because its Ohio sales are a small fraction of its total revenue.

This argument is contrary to binding U.S. Supreme Court and Sixth Circuit precedent. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220 (1957) (finding single transaction with forum customer enough to assert personal jurisdiction); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) ("[W]e must reject the district court's reliance on the *de minimis* amount of

software sales which Patterson claims he enjoyed in Ohio."). Courts universally agree that a business selling products bearing allegedly infringing trademarks in a forum state, even a small quantity, through an online store subjects the business to that state's jurisdiction. *See, e.g.*, *Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999) (finding "small" number of online sales to California customers sufficient to confer personal jurisdiction).[1]

The reason is the simple difference between *specific* and *general* jurisdiction. When the forum contacts are unrelated to the cause of action, plaintiff must establish *general* jurisdiction by showing substantial contacts with the forum state. When, as here, the forum contacts actually give rise to the cause of action, mere "minimum contacts" establish *specific* jurisdiction. Because a trademark action arises out of the sale of goods bearing the infringing mark, a single sale of an accused good in the forum state is enough for this Court to assert *specific* personal jurisdiction. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (noting that "[n]o more is usually required to establish specific jurisdiction" than to allege defendant purposefully shipped infringing good into forum state). This case arises out of the very nail polish products that Julep admits it has shipped into Ohio. So this Court has specific jurisdiction, regardless of the quantity of Ohio sales.

The cases that Julep relies upon in its motion to dismiss are readily distinguishable and do not apply either because (i) the forum sales were not related to the cause of action to form *specific* jurisdiction and not substantial enough to form *general* jurisdiction; or (ii) the defendant made no actual forum sales. And ironically some of Julep's cases actually support Zoya's position that maintaining an online store and selling one or more infringing products in the forum state is enough for personal jurisdiction to exist. *E.g.*, *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 166-67 (2d Cir. 2010) (finding New York had jurisdiction over

---

[1] *See also* cases cited *infra* p. 8, 15.

defendant that sold one knock-off handbag to New York customer and made other online sales). Noticeably, Julep does not cite a single case (let alone binding precedent) where, as here, a defendant sold infringing goods – no matter the amount – through an online store in a forum state that lacked jurisdiction to hear a trademark suit over those goods. That lack of legal authority is fatal to its motion.

The Court should deny Julep's motion accordingly. If, however, the Court is at all inclined to grant Julep's motion, Zoya requests that the Court first grant it an opportunity to conduct personal jurisdiction discovery to obtain further evidence of this Court's jurisdiction.

## Law and Argument

### I.     Julep Waived Its Personal Jurisdiction Defense

As a threshold matter, Julep waived its personal jurisdiction defense when its current attorneys entered an unconditional appearance as "counsel of record" by filing a notice of substitution. In *Gerber*, the Sixth Circuit expressly held that a defendant waives a personal jurisdiction defense, and voluntarily submits to the district court's jurisdiction, when counsel generally appears on behalf of the defendant. *Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011). There, prior to moving to dismiss for lack of personal jurisdiction, the defendants' counsel filed a single-sentence entry of appearance that stated: "Now comes Richard M. Kerger and enters his appearances as counsel for defendants, James C. Riordan and Seven Locks Press Corp. in this matter." *Gerber v. Riordan*, Case No. 3:06-cv-01525, Dkt. No. 22 (N.D. Ohio Oct. 6, 2006) (attached as **Exhibit 1**). The attorney did not state he was entering a "special" appearance, or that his appearance was limited to moving to dismiss on jurisdictional grounds. The Court held the unconditional nature of counsel's appearance waived the personal jurisdiction defense because it "constituted a voluntary acceptance of the district court's jurisdiction." *Gerber*, 649 F.3d at 520.

Similarly, Julep waived its personal jurisdiction defense when its current counsel, George Carr and Mark Thompson of the Gallagher Sharp law firm, entered an unconditional appearance "as counsel of record" on the court's docket. (Dkt. No. 5.)  On September 6, 2011, Julep moved unopposed for an extension of time to respond to Zoya's complaint through its prior attorney, Jennifer Buckey Wick. (Dkt. No. 4.) A month later, attorneys Carr and Thompson substituted for Wick by filing a document captioned "Defendant's Notice of Substitution of Counsel." (Dkt. No. 5.) That document stated that Carr and Thompson "hereby substitute as

counsel of record for Defendant, Julep Nail Parlor Company, in place of Jennifer Buckey Wick . . . All future correspondence and pleadings should be directed to the undersigned counsel." (*Id.*)

Counsel's "general appearance" waives a personal jurisdiction defense under *Gerber*. The reason is Julep's notice advised that Carr and Thompson were "counsel of record" without limitation. Had Julep intended on challenging jurisdiction, its counsel's appearance entry needed to specify that it was "special" or entered for the limited purpose of opposing personal jurisdiction. *See Gerber*, 649 F.3d at 520. It did not. Indeed, counsel's appearance entry went even further than the one-sentence entry in *Gerber*, which stated only that the attorney "enters his appearances as counsel for defendants." (**Ex. 1**.) Here, in addition to unconditionally appearing as "counsel of record," Julep's notice advised that "[a]ll future correspondence and pleadings should be directed to the undersigned counsel." (Dkt. No. 5.) That extra verbiage further submitted Julep to this Court's jurisdiction because it created the expectation that Julep would defend the suit on the merits in a way that would generate ongoing "future correspondence and pleadings." *See Gerber*, 649 F.3d at 519 (noting that general appearance entries waive jurisdictional challenges because they "give plaintiff a reasonable expectation that defendants will defend the suit on the merits"). Therefore, Julep has waived the jurisdictional defense it now asserts. The Court should deny its motion on that basis alone.

## II.     Regardless Of Waiver, This Court Has Personal Jurisdiction

### A.     Zoya Need Only Make A *Prima Facie* Jurisdictional Showing

Because no party has requested an evidentiary hearing, Zoya "need only make a prima facie showing of jurisdiction" to defeat Julep's motion. *CompuServe*, 89 F.3d at 1262. That showing is a "relatively slight" burden. *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). In deciding whether Zoya has made a proper showing, the Court

"[m]ust consider the pleadings and affidavits in a light most favorable to the plaintiff" Zoya. *CompuServe*, 89 F.3d at 1262. Thus, any disagreements between the complaint and the declaration of Julep's witness are resolved in Zoya's favor. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1271-72 (6th Cir. 1998).

Applying those standards, this Court has personal jurisdiction when (i) conferred by Ohio's long-arm statute; and (ii) consistent with due process of law. *CompuServe*, 89 F.3d at 1262. As explained below, Zoya has made a *prima facie* showing as to both elements.

### B.  Four Separate Subsections Of Ohio's Long-Arm Statute Are Satisfied

#### 1.  *Section (a)(1) Of The Long-Arm Statute Is Satisfied*

Section (a)(1) of Ohio's long-arm statute confers jurisdiction "as to a cause of action arising from the person's . . . [t]ransacting any business in this state."  R.C. 2307.382(a)(1). Section (a)(1) is "very broadly worded" and permits jurisdiction over non-residents who transact "any" business in Ohio. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75 (1990). A defendant "transacts" business in Ohio when, as here, it contracts to sell goods to Ohio customers and then ships the purchased goods into Ohio. *See Morel Acoustic, Ltd. v. Morel Acoustics USA, Inc.*, No. 3:04-cv-348, 2005 WL 2211306, at *6 (S.D. Ohio, Sept. 7, 2005) (finding defendant's admitted mail-order sales to Ohio customers was "transacting" business in Ohio). In the digital age, where business is often transacted by phone, e-mail, and Internet, a defendant need not be physically in Ohio to transact business here. *Ohio, ex .rel. DeWine v. GMAC Mortgage LLC*, No. 10CV2537, 2011 WL 1884543, at *1 (N.D. Ohio May 18, 2011) (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (1994)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire

communications across state lines, thus obviating the need for physical presence within a State in which business is conducted").

Here, Julep has transacted business in Ohio because, according to its own witness's declaration, it processed online orders for the "accused nail polish" from Ohio customers, accepted payment from those customers, and shipped the purchased goods to Ohio addresses. (Park Decl. ¶ 5-7, 9.) That those sales allegedly netted around $400 is of no import because "any" business transaction triggers jurisdiction under the statute, even a single transaction. *Clark v. Connor*, 82 Ohio St.3d 309, 315 (1998) ("[A] state may assert jurisdiction over a nonresident who engages in a single isolated transaction in a state out of which a tort arises. . . ." (quoting *Innovative Digital Equip., Inc. v. Quantum Tech., Inc.*, 587 F. Supp. 983, 987 (N.D. Ohio 1984)). Julep's arguments that it must have a substantial amount of sales in Ohio to "transact" business confuses Section (a)(1), which is triggered by "any" transaction, with Section (a)(3), which is triggered if defendant "regularly does or solicits business" in Ohio. Thus, Julep's infringing sales and offers for sale of infringing product in Ohio satisfies Section (a)(1).

## 2. *Section (a)(2) Of The Long-Arm Statute Also Is Satisfied*

Section (a)(2) of Ohio's long-arm statute confers jurisdiction "as to a cause of action arising from the person's . . . [c]ontracting to supply services or goods in this state." R.C. 2307.382(a)(2). Julep admits it contracted to supply goods in Ohio by accepting and fulfilling online orders for nail polish and then shipping those goods into Ohio. (Park Decl. ¶ 6-7.) Thus, jurisdiction under Section (a)(2) exists.

### 3. <u>Section (a)(3) Of The Long-Arm Statute Also Is Satisfied</u>

Section (a)(3) of Ohio's long-arm statute confers jurisdiction "as to a cause of action arising from the person's . . . [c]ausing tortious injury by an act or omission in this state." R.C. 2307.382(a)(1). Injury from trademark infringement, which is a tort, occurs where the trademark owner resides. *Solar X Eyewear, LLC v. Bowyer*, No. 1:11-cv-00763, 2011 WL 3418306, at *2 (N.D. Ohio Aug. 4, 2011). Also, the act of trademark infringement occurs in any state where the defendant sells goods bearing the accused marks. *Id.* at *2. In *Solar X*, plaintiff alleged that defendant infringed its trademarks by selling competing sunglasses on a website. Because the plaintiff resided in Ohio, and because there was "some evidence" of Ohio sales, the Court ruled Section (a)(3) was satisfied and rejected defendant's personal jurisdiction defense. *Solar X Eyewear*, 2011 WL 3418306, at *2.

Because Zoya is incorporated and headquartered in Ohio, the alleged "tortious injury" occurred in Ohio. And because Julep admits it sold accused nail polishes in Ohio harmful "acts" occurred in Ohio. Thus, for the very same reasons in *Solar X*, Section (a)(3) applies.

### 4. <u>This Trademark Case "Arises Out Of" Julep's Infringing Sales</u>

Working to avoid Ohio jurisdiction, Julep argues that the long-arm statute cannot apply because Zoya's trademark claims solely "arise out of" Julep's "labeling and marketing" activities that, according to Julep, "all occurred in Washington state." (Julep Br. 7.) Julep misapplies the law. It is well established that trademark suits arise out of *sales* of goods bearing infringing marks, and therefore such claims are properly brought where the sales occur and not where the seller makes and labels the goods. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (finding trademark case arose in Michigan where Pennsylvania defendant sold some blood test services to Michigan customers under similarly worded

Michigan statute); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 566 (S.D.N.Y. 2000) (ruling that Citigroup's trademark case arose out of sale of defendant's services to New York customers "because it is 'precisely the bona fides of these products and services that [Citigroup] challenges'"); *Morel*, 2005 WL 2211306, at *7; *see also Beverly Hills Fan Co.*, 21 F.3d at 1571 (noting rule that trademark cases are properly brought where infringing sales are made). Indeed, *Gather, Inc.*, which Julep cites, held that trademark infringement arises in a forum where a website with infringing matter is accessed and where the harm occurs. *Gather, Inc. v. Gatheroo, LLC*, 443 F. Supp. 2d 108, 115 (D. Mass. 2006).

Even so, Julep's Washington acts alone are enough to confer jurisdiction under Section (a)(6), which confers jurisdiction when out-of-state acts are "committed with the purpose of injuring persons" in this state. R.C. 2307.382(a)(6). Zoya has alleged – and will prove at trial – that Julep intentionally copied Zoya's trademarked names with specific intent to trade upon Zoya's goodwill, cause consumer confusion, and take sales from Zoya. (Compl. ¶¶ 5, 8, 36-37, 44.) Thus, Section (a)(6) confers jurisdiction based on Julep's Washington acts alone.

### C. Exercising Personal Jurisdiction Does Not Violate Julep's Due Process Rights

#### 1. The Constitutional Touchstone Is "Minimum Contacts"

The Due Process clause allows a court to exercise jurisdiction over a non-resident defendant who establishes sufficient "minimum contacts" with a state such that the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction may be asserted under the Due Process clause where: (1) the non-resident defendant purposefully avails himself of the privilege of conducting activities in the forum state; (2) the cause of action arose from the defendant's activities in the forum state; and (3) the exercise of jurisdiction is reasonable. *CompuServe*, at 89 F.3d at 1263.

2. *Julep's Ohio Sales And Its*
*Interactive Website Are Purposeful Availment*

Julep has purposefully availed itself of Ohio law by choosing to sell and ship accused infringing products to Ohio residents, by maintaining an interactive website accessed by Ohioans, and by intentionally causing tortious injury in Ohio.

Intentional sales to forum customers, no matter the quantity, is purposeful availment. *See Neogen*, 282 F.3d at 892 (finding purposeful availment and stating that defendant "could not mail test results to and accept payment from customers with Michigan address without intentionally choosing to conduct business in Michigan."); *Morel Acoustic,* 2005 WL 221306, at *8 (finding purposeful availment because defendant chose to supply products to Ohio residents even though requests for goods initiated by customers in Ohio).

Also, maintaining an interactive website accessed by people in Ohio is purposeful availment according to the *Zippo* "sliding scale" test adopted by the Sixth Circuit. Under the *Zippo* test, a website – such as Julep's – through which visitors from the forum state have placed orders is on one end of the spectrum, where purposeful availment almost always exists. *Zippo* refers to cases on this far end of the scale as "doing business over the Internet" cases. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1199, 1125 (W.D. Pa. 1997). On the other end lies websites that are entirely passive, providing only information to visitors with no interactivity. Maintaining a passive website usually is not purposeful availment. *Neogen*, 282 F.3d at 890. Julep's website admittedly is not passive. (*See* Julep Br. 9 ("Here, Julep's Internet website, www.julep.com, is not passive . . ."); *see also* Isa Decl. ¶¶ 3-15 (explaining interactive features of Julep website).[2])

---

[2] A true copy of Rebecca Isa's Declaration is attached as **Exhibit 2**.

Courts universally find purposeful availment where the defendant sold goods or services in the forum – whether through Internet orders or otherwise – and maintained an interactive website. *E.g., Neogen*, 282 F.3d at 892. In *Neogen*, for example, a defendant that tested blood samples maintained an interactive website that did not accept online orders, and therefore was less interactive than Julep's website. *Id.* at 890-91. The district court dismissed the case for lack of personal jurisdiction because among the 215,000 blood samples analyzed by defendant, only 14 were analyzed for Michigan customers. *Id.*at 891. The Sixth Circuit rejected the district court's "percentage of business" analysis and reversed. *Id.* at 891-92. The Court held that because defendant knowing did business with Michigan customers, its Michigan contacts – although a small part of its total business – could not be called merely "fortuitous." *Id.* Because defendant "knew it was doing business with Michigan customers . . . [it] could reasonably anticipate being haled into a court in Michigan." *Id.*at 892-93.

Courts also agree that running a virtual store used by forum-based customers to place orders is purposeful availment, regardless of the number of sales. *See, e.g.*, *NCR Corp. v. PC Connection, Inc.*, 384 F. Supp. 2d 1152, 1161 (S.D. Ohio 2005); *Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999); *Young Again Prods., Inc. v. Acord*, 307 F. Supp. 2d 713, 717-18 (D. Md. 2004) (asserting jurisdiction based upon online sales in Maryland, despite sales constituting only .02% of total revenue); *Mattel, Inc. v. Adventure Apparel*, No. 00 CIV. 4085(RWS), 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001) (ruling single online sale in New York sufficient for jurisdiction to exist); *Sports Authority Mich., Inc. v. Justballs, Inc.*, 97 F. Supp. 2d 806, 813-14 (E.D. Mich. 2000).

Here, Julep admits that it has sold at least $400 worth of "accused nail polish" in Ohio during the five months since it "re-launched" its online store, presumably comprised of 20 or

more sales.[3] (Park Decl. ¶ 5.) By knowingly doing business with Ohio consumers, Julep could reasonably anticipate being haled into a court in Ohio. *See Neogen*, 282 F.3d at 892-93. That Julep admits that Ohio customers can (and do) purchase nail polish through its website confirms that Julep's website is on the far end of the *Zippo* spectrum where purposeful availment undoubtedly lies, thereby fortifying this court's jurisdiction. Thus, this Court has personal jurisdiction for the very same reasons as the court in *Neogen*. Neither *be2 LLC* or any case cited in footnote one of Julep's brief where jurisdiction was lacking apply because none of those defendants ran websites with online ordering capabilities through which they shipped goods into the forum state. (*See* Julep Br. 10-11 n.1.)

In addition to the online store feature, other interactive parts of Julep's website further confirm that it purposefully availed itself of doing business in Ohio. For example, Julep's website:

- Allows Ohio users to register and become a "Julep.com girlfriend" making it easier to post comments on favorite polishes and "super easy for [Julep] to ship to [the customer] right away. (Isa Decl., Ex. E.)

- Allows Ohio users to sign up to be a "Julep Maven" to receive a customized "Style Profile" that Julep will use to "personally select products every month that best compliment [a user's] unique look" and "customize a Sneak Peek Box" of Julep products that compliment the user's unique look. Julep sends e-mail to Julep Maven's on the 20th of the month with a preview of the products customized for that Maven. (*Id.*, Ex. F.)

- Allows Ohio users to subscribe to receive information "on color trends, celebrity sightings and new Julep products." (*Id.*, Ex. G.)

- Provides shipping information for shipping within the United States, including Ohio. (*Id.*, Ex. K.)

- Allows customers to store information needed to make purchases such as a credit card number, and shipping and billing addresses. (*Id.*, Ex. J.)

---

[3] Julep avoids saying how many separate orders it shipped to Ohio customers. But given that a bottle of nail polish sells for $14, (Isa Decl. Ex. D), it could be as many as 28 separate orders.

- Provides a toll free number to contact julep.com. (*Id.*, Ex. A.)

Indeed, given all those hallmarks, Julep readily admits that its website is "interactive," (Julep Br. 9), a type of website "often constitut[ing] purposeful availment." *Solar X Eyewear,* 2004 WL 3418306, at *3. Courts routinely find websites with similar features to be sufficiently interactive to constitute purposeful availment. *See id*, at *4; *Bath & Body Works, Inc. v. Wal-Mart Stores, Inc.*, No. C-2-99-1190, 2000 WL 1810478, at *7 (S.D. Ohio Sept. 12, 2000); *Morel Acoustics*, 2005 WL 2211306, at *7. As in *Neogen*, *Solar X Eyewear*, *Morel*, and *Bath & Body Works*, Julep's sales to Ohio residents and its maintaining an interactive website more than show that Julep purposefully availed itself of doing business in Ohio.

3.     *Julep Causing Tortious Harm In Ohio Also Is Purposeful Availment*

In addition, under the *Calder* "effects" test, "minimum contacts" exist – or are enhanced – when intentional tortious acts have a harmful "effect" in the forum state, even when all tortious acts are committed out-of-state. *See Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (noting that defendants should "reasonably anticipate" being haled into state where it intentionally caused tortious injury); *see also Kauffman Racing Equip, L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, ¶ 52-69 (2010) (finding personal jurisdiction over defendant who posted statements online with intent to harm Ohio company); *Zippo*, 952 F. Supp. at 1127 (finding purposeful availment where, among other things, alleged trademark infringement caused tortious injury in forum state). Indeed, *Rio Properties* – a case cited by Julep – held purposeful availment occurred because defendant's online trademark infringement caused injury in Nevada to a trademark owner – a Las Vegas casino. *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002). The *Calder* "effects" test applies to trademark cases and supports jurisdiction in the trademark owner's home state. *See, e.g.*, *Licciardello v. Lovelady*, 544 F.3d 1280, 1287-88 (11th Cir. 2008).

Because Julep intentionally copied Zoya's trademarked nail polish names and knowingly caused tortious injury to Zoya here in Ohio, (Compl. ¶¶ 5, 8, 36-37, 44), the *Calder* effects test is satisfied. Therefore, Zoya's Ohio sales and its website – either standing alone or in conjunction with the *Calder* "effects" it had in Ohio – provide more than an ample *prima facie* showing of purposeful availment.

4.    <u>*Zoya's Suit Arises From Julep's Ohio Contacts*</u>

Zoya also has made a *prima facie* showing that its cause of action arose from the Julep's activities in the forum state – the second part of the minimum contacts test. As previously discussed, trademark suits arise out of the sale of goods bearing the infringing marks. (*See supra* p. 5-6.) Because Zoya admits it has sold "accused nail polish" in Ohio, Zoya's suit arises out of those contacts.

5.    <u>*Exercising Personal Jurisdiction Over Julep Is Reasonable*</u>

When the defendant has sufficient contacts with and the cause of action arises from the defendant's activity in the forum state, there is an inference that exercising jurisdiction over a defendant is fair. *CompuServe*, 89 F.3d at 1268. "[O]nly the unusual case will not meet this third criterion." *Am Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988). Having demonstrated Julep's sufficient contacts with Ohio that gave rise to Zoya's cause of action, the exercise of jurisdiction over Julep is reasonable.

Moreover, by choosing to consummate sales transactions with Ohio customers and by intentionally causing infringement damages to Zoya in Ohio, Julep should reasonably anticipate being haled into court in Ohio. *See Neogen*, 282 F.3d at 892-93; *Morel Acoustic*, 2005 WL 2211306, at *8. Additionally, "Ohio has a legitimate interest in protecting the business interests of its citizens," such as Zoya, and discouraging trademark infringement and unfair competition

within the state. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002); *CompuServe*, 89 F.3d at 1268; *Bath & Body Works*, 2000 WL 1810478, at *9. Furthermore, because modern advancements have made it easier and less expensive to travel and communicate, it is usually not unreasonable to require a business to defend itself in a different state, especially when it has the means to sell goods in the forum state. *Smith v. GAF Corp.,* 583 F. Supp. 1101, 1104 (S.D. Ohio 1984) ("Moreover, modern transportation and communication have made it economically feasible and much less burdensome for a defendant corporation to defend itself in a state where it engages in economic activity.") That is especially true for Julep, which is has the financial means to defend itself in Ohio. (Park Decl. ¶ 8.) (stating that Julep has "generated more than $2,500,000 in total revenue").

### III.   Julep Shipped Product Into Ohio By Its Deliberate Choice to Sell to Ohio Residents

Julep argues that this Court lacks jurisdiction because Julep did not "specifically intend[] to interact with Ohio residents." (Julep Br. 10.) This argument misunderstands the meaning of "purposeful availment." By consciously accepting and fulfilling multiple orders by Ohio residents, Julep purposefully availed itself of the privilege of doing business in Ohio, regardless of what it believed it "intended." "When a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.'" *Zippo Mfg. Co.*, 952 F. Supp. at 1126 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Indeed, the cases cited by Julep do not support its incorrect statement of the law. To the contrary, at least one of those cases, *Gather, Inc.*, specifically held that a website available to all 50 states used by consumers in the forum state is purposeful availment. *Gather, Inc.*, 443 F. Supp. 2d at 117 (analogizing to *Zippo* because defendant did not restrict access to website and chose to engage with Massachusetts customers who accessed the website).

Julep's Ohio sales are not, as it suggests, "fortuitous" within the meaning of the Supreme Court's *World-Wide Volkswagen* opinion. In *World-Wide Volkswagen*, New York residents purchased a vehicle in New York, drove it to Oklahoma, and sued the New York car dealer in Oklahoma. The dealer had not sold, nor tried to sell, a single car in Oklahoma. The Supreme Court described the dealer's contact with Oklahoma as "fortuitous" because it resulted entirely from plaintiff unilaterally driving the car to Oklahoma. *World-Wide Volkswagen*, 444 U.S. at 295.

But that is not what happened. Instead, as Julep admits, it repeatedly and consciously chose to sell nail polish to Ohio residents to make a profit. (*See* Park Decl. ¶¶ 6-7.) Had Julep not wanted to be subject to Ohio jurisdiction, then it should have declined those sales or restricted its online sales to certain states. *See World-Wide Volkswagen*, 444 U.S. at 297 (noting that defendants can "alleviate the risk of burdensome litigation by . . . severing its connection with the State"). In rejecting the same argument raised by Julep, the *Zippo* court aptly noted "[i]f [defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, the solution would have been simple – it could have chosen not to sell its services to Pennsylvania residents." *Zippo*, 952 F. Supp. at 1126-27; *see also JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363, 1367 (S.D. Fla. 1999) (finding no jurisdiction in Florida because website owner "prohibited the sale of its services to Florida residents," which constituted "purposeful avoidance"). Indeed, to this day, Julep's website continues to accept orders from Ohio customers to ship the accused nail polishes into Ohio:



(Isa Decl. ¶¶ 4, 6-8, Ex. D (describing order placed on November 11, 2011).) Thus, Julep's argument that it lacks any purposeful connection to Ohio lacks merit.

Moreover, Julep holds itself out as a company with a national presence and touts its recognition in nationally known, fashion related, magazines such as Lucky Magazine, In Style, Us Weekly, Allure, etc. (Isa Decl. at Ex. A, H.) So it is targeting all 50 states. Julep also seeks to appeal to consumers on a national scale by affiliating itself with celebrities including through its presence at the 2011 Oscar Awards. (*Id.* Ex. I.) Julep cannot do all this and then object when haled into an Ohio court to answer for the harm its sales have caused an Ohio corporation. *See Neogen*, 282 F.3d at 891-92 (finding defendant purposefully availed itself of doing business in Michigan where, through its website, defendant held itself out as willing to do testing for any person in any state and mailed test results to and accepted payment from customers in Michigan).

## IV.    Julep's "*De Minimis* Sales" Theory Is Contrary To Law

Julep's purported "miniscule" Ohio sales do not negate that it purposefully availed itself of doing business in Ohio.[4] The Sixth Circuit repeatedly has rejected Julep's "*de minimis* sale" argument, holding that the "proper test for personal jurisdiction is not based on a 'percentage of business' analysis." *Neogen*, 282 F.3d at 891; *see also CompuServe*, (rejecting argument that no jurisdiction existed because Ohio contacts "yielded little revenue"). It is the nature and quality of the sales, not the quantity, that determine purposeful availment. *CompuServe*, 89 F.3d at 1265. The Supreme Court has made clear that a single contact can be sufficient. *McGee*, 355 U.S. at 223. Thus, courts regularly find purposeful availment in trademark cases despite allegedly "miniscule" sales in the forum state:

- Jurisdiction in Michigan where 14 of the 215,000 transactions (0.006%) occurred with Michigan customers. *Neogen*, 282 F.3d at 886, 891.

- Jurisdiction in Ohio where mail order business, from which defendant derived less than 1% of total revenue, had just "some mail order customers in Ohio." *Morel*, 2005 WL 2211306, at *6.

- Jurisdiction in Texas where fewer than 0.5% of online sales made in Texas. *Am. Eyewear, Inc. v. Peeper's Sunglasses and Acces., Inc.*, 106 F. Supp. 2d 895, 898, 901-902 (N.D. Texas 2000)

- Jurisdiction in Maryland where online sales to Maryland customers constituted only 0.02% of total revenue. *Young Again*, 307 F. Supp. 2d at 717-18.

- Jurisdiction in New York based upon single online sale to New York resident. *Mattel*, 2001 WL 286728, at *3.

Even Julep's *Gather, Inc.* case held jurisdiction existed despite only four forum residents using the infringing website on the date of filing. *See Gather, Inc.*, 443 F. Supp. 2d at 112.

---

[4] Also, Julep's mathematics demonstrate that a percentage-based analysis is easy to manipulate and therefore unreliable. For example, Julep compares the $400 it made on Ohio sales of "accused nail polish" since May 2010 with its $2.5 million in *total* revenue since its inception. (*See* Julep Br. 4; Park Decl. ¶¶ 7-8.) But comparing the $400 figure to the smaller *online sales* revenue since the "re-launch" of the online store in May 2010 would yield a higher percentage.

Again, Julep does not cite a single case where a defendant made a forum sale of a good bearing an infringing mark and the forum lacked jurisdiction to hear a trademark case relating to that good. Thus, what matters is that Julep admits repeated sales of "accused nail polish" to Ohio customers, the amount and percentages of revenue generated from those sales is immaterial.

## V.    The Cases Cited By Julep Are Unavailing

The cases on which Julep relies to argue its Ohio contacts are not enough to confer jurisdiction are easily distinguishable and therefore unavailing.

In *Epic*, a customer-defendant in Georgia did not direct any business into Ohio. (Julep Br. 7, quoting *Epic Communs., Inc. v. Progressive Communs., Inc.*, No. 1:07CV3243, 2008 WL 1930419 (N.D. Ohio Apr. 30, 2008).) Instead, it merely received information "relayed" from Ohio by the plaintiff. *Epic*, 2008 WL 1930419, at *4. Similarly, in *Yevu*, a National City Bank customer merely sent monthly credit line payments to National City in Ohio. (Julep Br. 7, citing *Nat. City Bank v. Yevu*, 178 Ohio App.3d 382, 2008-Ohio-4715). Thus, in both cases, it would be unreasonable to force customers of Ohio businesses to defend themselves in Ohio merely because of the fortuitous location of the party to whom they sent payments, in the same way it would be unreasonable to hale Julep's Ohio customers to Washington. Here, in contrast, Julep purposely directed its business towards Ohio by accepting online orders from Ohio customers and shipping product into Ohio. It, therefore, is not unreasonable to require Julep to answer in Ohio if those products infringe a trademark, breach a warranty, or cause personal injury.

Julep's reliance on *Kroger* also is unavailing because there the New York defendant received rent checks from Ohio solely because the "fortuitous" unilateral acts of third-parties caused a lease agreement to be assigned to the plaintiff, which chose to send rent checks from Ohio. (Julep Br. 7, citing *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 512 (6th Cir.

2006).) *Kroger* stands for the unremarkable proposition that merely receiving checks from Ohio is not "transacting business" in Ohio. *See Kroger*, 437 F.3d at 512. As explained above, Julep did more than receive checks from Ohio; it purposely transacted business in Ohio by accepting online orders from Ohio customers, shipping goods to Ohio in fulfillment of those orders, and causing tortious injury in Ohio.

Furthermore, *Epic*, *Yevu*, and *Kroger* are contract cases, not trademark cases: a field where it is well established that selling infringing products in the forum, causing injury in the forum, and maintaining an interactive website creates personal jurisdiction. *See, e.g.*, *Neogen*, 282 F.3d at 888. Also, the minimum contacts analysis for a tort case – such as the present trademark case, differs from that applied in contract cases because in the former the court also considers whether the "effect" of the tortious conduct occurred in the forum state. *See Calder*, 465 U.S. at 789. Here, that Julep caused tortious injury in Ohio is an additional "minimum contact" with Ohio not present in the contract cases cited by Zoya. Also, purposely shipping goods bearing infringing trademarks into Ohio, as Julep has done, is a far cry from the attenuated connections in those cases.

Also, Julep's reliance on *Spriggs* is puzzling as it supports Zoya, not Julep. In *Spriggs*, an out-of-state owner of a website that provided access to photographs in return for a "membership fee" had transacted business in Ohio because at least two Ohioans had accessed the website. *Davis v. Spriggs*, 2010 WL 4881491, 2010-Ohio-5802 (Ohio App.). Julep transacts business in Ohio for the very same reason: it owns and operates a website that – by its own admission –Ohio customers have repeatedly used to purchase goods or services. That the website in *Spriggs* requires a "membership fee" to view photos, while Julep's website requires a credit card payment to receive goods is a classic distinction without a difference.

Julep's reliance on *McGill* and *Cadle* is misplaced as each case is readily distinguishable. (Julep Br. 9-10.) In *McGill*, the plaintiff brought a claim for patent infringement of ice cream dispensers. *McGill Tech Ltd. v. Gourmet Techs., Inc.*, 300 F. Supp. 2d 501 (E.D. Mich. 2004). The Eastern District of Michigan found that there was no <u>*general*</u> personal jurisdiction where the defendant's only contact with the state was through the single internet sale of a gelato pan that was not related to the cause of action for patent infringement. *Id.* at 508. Here, Zoya relies upon *specific* personal jurisdiction, which a single sale can satisfy. *See McGee*, 355 U.S. at 223. In *Cadle*, the Massachusetts defendant maintained a purely informational website dedicated entirely towards removing the plaintiff from conducting business in *Massachusetts* and there was no evidence of any interaction with Ohio residents. *Cadle Co. v. Schlichtmann*, 123 Fed. Appx. 675, 678 (N.D. Ohio 2004). Here, Julep's website is on the opposite end of the *Zippo* spectrum because it transacts business and it has been used to consummate repeated sales transactions with Ohio customers.

## Conclusion

For the foregoing reasons, the Court should deny Julep Nail Parlor Company's motion to dismiss. If, however, the Court is at all inclined to grant that motion, Zoya requests that the Court first grant it an opportunity to conduct personal jurisdiction discovery to obtain further evidence of this Court's jurisdiction.

Dated:   November 14, 2011

   s/ Matthew J. Cavanagh
David B. Cupar (OH 0071622)
  *dcupar@mcdonaldhopkins.com*
Matthew J. Cavanagh (OH 0079522)
  *mcavanagh@mcdonaldhopkins.com*
Scott M. Slaby (OH 0076610)
  *sslaby@mcdonaldhopkins.com*
MCDONALD HOPKINS LLC
600 Superior Avenue, East
Suite 2100
Cleveland, Ohio 44114
t 216.348.5400
f 216.348.5474

*Counsel for Plaintiffs*

<u>Certificate Of Service</u>

I hereby certify that on November 14, 2011, a copy of the foregoing **Plaintiffs' Memorandum In Opposition To Julep's Motion To Dismiss For Lack Of Personal Jurisdiction** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, and parties may access this filing through the Court's system.

    s/ Matthew J. Cavanagh       

*Counsel for Plaintiffs*

<u>L.R. 7.1(f) Certification</u>

In accordance with Local Rule 7.1(f), I hereby certify that this case is on the standard track and that the foregoing **Plaintiffs' Memorandum In Opposition To Julep's Motion To Dismiss For Lack Of Personal Jurisdiction** complies with the applicable page limitation of 20 pages.

  s/ Matthew J. Cavanagh
*Counsel for Plaintiffs*