**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ZOYA COMPANY, et al. ) | Case No. 1:11-cv-1702 |
| ) | |
|       Plaintiffs, ) | Judge Dan Aaron Polster |
| ) | |
| vs. ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| JULEP NAIL PARLOR COMPANY, ) | |
| ) | |
|       Defendant. ) | |

     This is a trademark infringement case. Plaintiffs filed their complaint on August 15, 2011 asserting four causes of action: (1) federal unfair competition under the Lanham Trademark Act, 15 U.S.C. § 1125(a)(1)(A); (2) violation of Ohio's Deceptive Trade Practices Act, Ohio Revised Code § 4165.01 et seq.; common law unfair competition; and unjust enrichment. Now before the Court is Defendant Julep Nail Parlor Company's Motion to Dismiss for Lack of Personal Jurisdiction (**Doc. # 6**).

     I. Background

     Plaintiffs are an Ohio-based cosmetics company that started 25 years ago here in Cleveland.[1] Their company sells nail polish, and their marketing strategy involves branding nail polish colors with distinctive female names. For instance, a nail polish of a certain red hue is named "Salma," while a nail polish of another hue is named "Gweneth."

     Defendant, a corporation whose principal place of business is Seattle, Washington, also sells nail polish.[2] Like Plaintiffs, Defendant assigns female names to its different nail polish colors. Defendant markets and sells its products through a website. Since May of this year, when its website was updated and re-launched, Defendant has sold $946.60 worth of products to Ohio customers–less than 0.5% of Defendant's company-wide revenue. (Doc. # 6-1).

---

     [1]The facts are taken from Plaintiffs' complaint, Doc. # 1, unless otherwise noted.

     [2]Defendant is not licensed as a foreign corporation in Ohio, nor has it appointed a statutory agent for service in Ohio. (Doc. # 6-1).

Defendant does not direct any marketing efforts to Ohio consumers and has no expectation of selling any of its products to Ohio customers–Defendant considers its Ohio sales to be a happy accident of the Internet's ubiquity. (Id.)

Defendant, in its motion to dismiss, claims that personal jurisdiction is lacking because Ohio's long-arm statute, Ohio Revised Code 2307.382, does not confer jurisdiction on the Court and an exercise of jurisdiction would violate the Due Process Clause of the United States Constitution. Plaintiffs respond by arguing that not only does personal jurisdiction exist, but also that Defendant waived personal jurisdiction when its current attorney made a notice of appearance.

### II. Waiver

The Sixth Circuit has held that, under Federal Rule of Civil Procedure 12(h), a party waives the right to contest personal jurisdiction by failing to raise the issue when making a responsive pleading or a general appearance. Gerber v. Riordan, 649 F.3d 514, 520 (6th Cir. 2011). Plaintiffs aver that Defendant's attorney made a general appearance by filing a notice of substitution on October 4 and did not, at that time, raise the issue of personal jurisdiction. Defendant responds that its attorney made only a notice of substitution of counsel, not a general appearance. Defendant also points out that in Gerber, the Sixth Circuit explained that the waiver applies only when a submission, appearance, or filing by a defendant gives the plaintiff a "reasonable expectation that the defendants will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." Id. at 519. Defendant asserts Plaintiffs had no reasonable expectation that Defendant would defend the suit on the merits and the Court did not have to waste any effort since nothing was filed between the notice of substitution and the motion to dismiss. All that being said, the Court need not resolve this issue because, for the reasons discussed below, the Court finds that personal jurisdiction exists on the merits.

### III. Personal Jurisdiction

In determining the existence of personal jurisdiction over a defendant, the Court must

engage in a two-step process. The Court must first determine whether personal jurisdiction is proper under the forum state's long-arm statute. Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002). If it is, then the Court must determine if the exercise of that jurisdiction is consistent with the Due Process Clause of the United States Constitution. Id.

Although the plaintiff bears the burden of showing that a federal court has personal jurisdiction over the defendant, when the Court relies only on written submissions and affidavits, as it does here, the burden on the plaintiff is relatively slight, and the plaintiff must make only a prima facie showing that personal jurisdiction exists. Air Prods. & Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007). The Court must view the pleadings and affidavits in a light most favorable to the plaintiff, and when the Court disposes of a Rule 12(b)(2) motion without an evidentiary hearing, it does not consider facts proffered by the defendant that conflict with those offered by the plaintiff. See CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262–63 (6th Cir. 1996) (noting that a court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal and finding that the district court erred in considering such an affidavit).

### A. Ohio's Long-Arm Statute

The first issue is whether personal jurisdiction is proper under Ohio's long-arm statute, Ohio Revised Code 2307.382. The statute provides in pertinent part that "[a] court may exercise personal jurisdiction over a person who[c]aus[es] tortious injury by an act or omission in this state." Id. at 2307.382(A)(3).

Trademark infringement is a tort. Bird, 289 F.3d at 876. The act of infringement occurs in the state where the infringing product is sold. See Oasis Corp. v. Judd, 132 F. Supp. 2d 612, 620-621 (S.D. Ohio 2001) (citing Vanity Fair Mills v. T. Eaton Co., 234 F.2d 633, 639 (2d Cir. N.Y. 1956) (noting that in cases of trademark infringement the wrong occurs where the passing off occurs, that is, where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's)). Accord Solar X Eyewear, LLC v. Bowyer, 2011 WL 3418306 (N.D.Ohio 2011). The injury in a trademark infringement case occurs both in the place the

plaintiff does business and in the state where plaintiff's primary office is located. Bird, 289 F.3d at 876.

Here, the act of infringement–the selling of the nail polish–took place in Ohio.[3] The injury also took place here, as Plaintiffs do business in Ohio and have their primary office here. Accordingly, the Court is satisfied that Plaintiffs have met their burden of showing that personal jurisdiction exists under section 2307.382(A)(3) of the Ohio long-arm statute.

### B. Due Process

The Due Process inquiry examines whether a nonresident defendant has sufficient contacts with the forum state that the Court's exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice." Patterson, 89 F.3d at 1263 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The Sixth Circuit has translated this general rule into three criteria: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. Patterson, 89 F.3d at 1263.

#### i. Purposeful availment

The purposeful availment requirement asks whether the defendant purposefully established "minimum contacts" in the forum state and whether the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "ensures that a defendant will not be haled into a foreign jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of another party or a third person.'" Id. at 475 (internal citations omitted).

---

[3]In support of its position, Defendant cites Embs v. Jordan Outdoor Enters., in which the court found that section (A)(3) of Ohio's long-arm statute did not apply to a claim of patent infringement. 74 U.S.P.Q.2D (BNA) 1470, 2004 U.S. Dist. LEXIS 27962. That case, however, is distinguishable: the court found that because the defendant did not make or sell any of his products in Ohio he did not cause a tortious injury in Ohio.

Defendant contends it did not purposefully avail itself of the privilege of doing business in Ohio: it took no steps to focus its business activities in Ohio and simply offered its products for sale through the Internet. Plaintiffs, on the other hand, contend that Defendant purposefully availed itself of Ohio law by choosing to sell and ship its products to Ohio residents, by maintaining an interactive website, and by intentionally causing a tortious injury in Ohio.

The Court agrees with Plaintiffs. To be sure, a passive website alone does not satisfy the purposeful availment requirement. See Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 890 (6th Cir. 2002). Here, however, Defendant's website is not passive. It allows users to place orders for its products, to store personal information, including name, e-mail address, phone number, and credit card information, and to register a username and password. (Doc. # 7-2). It provides shipping estimates for different states, including Ohio. (Id.) It includes links that allow customers to "Connect on Facebook" and "Connect on Twitter" and to subscribe to a monthly newsletter. (Id.) It permits users to sign up to be a "Julep Maven" to receive a customized "Style Profile" that Defendant will use to "personally select products every month that best compliment [the user's] unique look." (Id.) It lists a customer service line. (Id.) And, most importantly–and as Defendant readily admits–Ohio residents have actually ordered and Defendant has actually sold products through the website.

Websites with similar features have been found to satisfy the purposeful availment requirement. See, e.g., Solar X, 2011 WL 3418306 (finding purposeful availment where the website allowed users to place order for sunglasses, let users create personalized accounts, had a mailing list, provided a customer service link, invited customers to become a "fan" on Facebook or Twitter, and included a page with shipping estimates by state, and where defendant actually sold sunglasses via its website); Wood v. 1–800–Got–Junk?, LLC, 2007 WL 895008 (S.D.Ohio 2007) (website marketed products to Ohio residents and included a customer service line); V Secret Catalogue v. Zdrok, 2003 WL 22136303(S.D.Ohio 2003) (website offered quizzes and a webcam); Bath and Body Works, 2000 WL 1810478 (S.D. Ohio 2000) (website advertised an order hotline, provided information and a link for placing online orders, and invited customers to

join its e-mail list).

As to Defendant's assertion that its Ohio sales constitute only fraction of its company-wide revenue, the Court is guided by the Sixth Circuit's opinion in Patterson: "It is the quality of the contacts, and not their number or status, that determines whether they amount to purposeful availment." 89 F.3d at 1265  (internal quotations and citations omitted).  In that case, the Sixth Circuit rejected the district court's reliance on the *de minimis* amount of sales the defendant made in Ohio and noted, "Patterson's contacts with Compuserve here were deliberate and repeated, even if they yielded little revenue from Ohio itself." Id.

The Court therefore finds that the facts, when viewed in the light most favorable to Plaintiffs, support a finding that Defendant purposefully availed itself of the privilege of doing business in Ohio.  Defendant knowingly sold its products to Ohio residents through a website with numerous interactive features.

### ii. Cause of action arises from Defendant's activities

This prong of the Due Process inquiry is resolved by the Court's discussion of whether Defendant is subject to personal jurisdiction under Ohio's long-arm statute.  As discussed above, the act of trademark infringement occurs where the infringing product is sold and the injury occurs where the plaintiff does business and in the state where its primary office is located.  Both the alleged act and injury occurred in Ohio.  Thus, the Court finds that the cause of action arises from Defendant's activities here in Ohio.

### iii.  Substantial connection

The last prong of the Due Process inquiry asks whether Defendant's acts, or consequences caused by Defendant, have a substantial enough connection with Ohio to make the exercise of jurisdiction reasonable.  Usually an inference arises that this requirement is met when the first two requirement are met.  Bird, 289 F.3d at 875.  Still, the Court should consider several factors, including the burden on Defendant, the interest of the forum state, Plaintiffs' interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.  Id. (Internal quotations and citation omitted).

Defendant may be burdened by having to defend a lawsuit here in Ohio, but it knew when it sold products to Ohio customers that it was making a connection with Ohio, and there is nothing to suggest that Defendant will be unable to defend itself in this forum. Plaintiffs of course have a significant interest in obtaining relief in their home state. More importantly, Ohio has a legitimate interest in protecting its companies from trademark infringement behavior; Washington–Defendant's home state–does not have an overriding interest. See Id. ("Ohio has a strong interest in discouraging trademark infringement within the state and in seeing that its residents' property interests are protected."). Finally, Ohio has a strong interest in resolving a dispute that involves Ohio law, as this case does. For these reasons, the Court finds that Defendant has a substantial enough connection with Ohio that an exercise of jurisdiction is reasonable.

IV. Conclusion

Accordingly, because the Court finds an exercise of jurisdiction over Defendant comports with Ohio's long-arm statute and the Due Process Clause of the United States Constitution, Defendant's Motion to Dismiss (**Doc. # 6**) is hereby **DENIED**.

**IT IS SO ORDERED.**

                                       */s/ Dan A. Polster     November 29, 2011*
                                       **Dan Aaron Polster**
                                       **United States District Judge**