# Exhibit 1

<u>Settlement Agreement</u>

This Settlement Agreement (the "Agreement") is entered into as of this 30th day of May, 2012 (the "Effective Date"), by and among Zoya Company and Art of Beauty Inc. (collectively, "Zoya") and Julep Nail Parlor Company ("Julep"). Collectively, Zoya and Julep are the "Parties," and individually each is a "Party."

<u>Recitals</u>

WHEREAS, Zoya and Julep hereby enter into this Agreement.

WHEREAS, on August 15, 2011, Zoya filed a complaint against Julep in the United States District Court for the Northern District of Ohio, entitled *Zoya Company, et al. v. Julep Nail Parlor Company*, Case No. 1:11-cv-01702-DAP (the "Action").

WHEREAS, Zoya alleged claims in the Action for violations of the Lanham Act and the Ohio Deceptive Trade Practices Act, and unfair competition and unjust enrichment under Ohio common law. Zoya based its claims upon Julep using female and other names, in which Zoya claims trademark rights, to sell and market nail polish products. Julep denies Zoya's claims.

WHEREAS, at a January 17, 2012 court conference before United States District Judge Aaron Polster, the Parties agreed to the material and essential terms of a settlement and orally entered into a binding and enforceable settlement agreement.

WHEREAS, as a result of their settlement, the Parties stipulated to a dismissal of the Action, which Judge Polster signed and entered on January 17, 2012 (ECF # 14).

WHEREAS, a dispute regarding the January 17 settlement arose between the Parties (ECF # 15 and 16), which the Parties have agreed to resolve in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, and intending to be legally bound, the Parties hereby stipulate and agree as follows:

Terms

1. Conditions of Settlement

    1.1. Payment. Within 10 calendar days of the Effective Date, Julep shall pay to Zoya a total of $111,100 (U.S.) by check.

    1.2. Julep's Obligation. Julep shall not use any nail polish names that uses a single female name alone ("Prohibited Names"). Nothing in this paragraph limits or affects Julep's rights to use female first names in two-word or multiple-word nail polish color names so long as the female name is used with a category name, and Julep uses and maintains at least five category names. The female name and category name cannot both be Zoya's names. Julep agrees that the term "two-word or multiple word names" prohibits descriptive terms of the product being sold such as, without limitation, "nail polish," "nails," "color," lacquer," "polish," "varnish," or "enamel," in English or any other language. The two-word or multiple names must: (1) be next to each other; (2) have the same font and size on the UPC label; and (3) when used otherwise, the font size of the non-female word must be at least half the font-size of the female word.

    1.3. Julep's Website. Within 7 calendar days of the Effective Date, Julep shall remove all Prohibited Names from any website that it owns, maintains, or controls, including (without limitation) the website currently at www.julep.com and shall not use the Prohibited Names in any further advertising or marketing. Until December 31, 2012, Julep may sell off its remaining inventory of nail polish bottles now labeled with Prohibited Names. Julep agrees to use commercially reasonable efforts to relabel the UPC labels of the nail polish bottles currently on order to remove the Prohibited Names, and if Julep cannot have those bottles relabeled then Julep may sell off its bottles by December 31, 2012. After December 31, 2012, Julep must destroy or relabel that remaining inventory bearing the Prohibited Names.

    1.4. Sephora. Julep represents that it ordered nail polish bottles bearing Prohibited Names for shipment to Sephora prior to January 17, 2012 and that it will make a second shipment of nail polish bottles bearing Prohibited Names to Sephora in August 2012. Zoya agrees to that first shipment, and to allow Julep make that second August 2012 shipment, which shall not exceed 15,000 units bearing the Prohibited Names.

    1.5. QVC. Julep represents that it has a single shipment not exceeding 11,100 units bearing Prohibited Names that it made to QVC for an upcoming sale in Summer 2012. Zoya agrees to allow Julep to make

that sale to QVC.

1.6. <u>Goodwill</u>. Julep agrees that all goodwill it has derived from its advertising, marketing and sales of nail polish bottles having single female names, and all remaining bottles with single female names that it advertises, markets or sells under sections 1.3-1.5 inures to Zoya based on the limited license it receives from Zoya pursuant to the terms of this Agreement.

1.7. <u>End of Sales</u>. Effective immediately, other than its limited sales set forth in Sections 1.3-1.5, Julep shall not sell, offer to sell, ship, deliver, or otherwise provide any nail polish bearing any of the Prohibited Names to anyone.

1.8. <u>Zoya's Rights</u>. Nothing in this Agreement shall be construed to restrict or limit Zoya's rights to name its products.

2. <u>Withdrawal of Motions</u>. Within 10 calendar days of the Effective Date, the Parties shall withdraw their opposing motions to enforce settlement in the Action by filing a stipulated withdrawal in a form substantially similar to the draft document attached to this Agreement as Exhibit ~~C~~ A.

3. <u>Releases</u>

    3.1. <u>Zoya's Release</u>. As of the Effective Date of this Agreement, Zoya releases Julep and all of Julep's predecessors, successors, affiliates, assigns, directors, officers, representatives, employees, insurers, agents, owners, parents, and subsidiaries from: (a) the claims Zoya asserted in the Action; (b) any other claims that Zoya could have asserted in the Action and that arise out of the same transactions and occurrences at issue in the Action; and (c) any claims for breach of the January 17 settlement, which is superseded and incorporated into this Agreement.

    3.2. <u>Julep's Release</u>. As of the Effective Date of this Agreement, Julep releases Zoya and all of Zoya's predecessors, successors, affiliates, assigns directors, officers, representatives, employees, insurers, agents, owners, parents, and subsidiaries from: (a) any claims Julep could have asserted in the Action and that arise out of the same transactions and occurrences at issue in the Action; and (b) any claims for breach of the January 17 settlement, which is superseded and incorporated into this Agreement.

4. <u>Representations and Warranties</u>

    4.1. <u>Settlement Authority</u>. Each Party represents and warrants that, as of

{3764466:}                                3

the Effective Date, the individual signing the Agreement on its behalf has full and actual authority to do so.

4.2. <u>Legality</u>. Each Party represents and warrants that it is duly organized, validly existing, and in good standing under the laws of its state of incorporation and that the execution, delivery, and performance of this Agreement will not result in any violation of, or be in conflict with or constitute a default under, its certificate or articles of incorporation or bylaws, any federal or state laws or regulations to which it is subject, or any other agreement, instrument, judgment, decree, or order to which it is subject.

4.3. <u>Ownership</u>. Each Party represents and warrants that it is the sole and lawful owner of all right, title, and interest in and to each and every claim and every matter that it purports to release hereby, and it has not assigned, delegated, or otherwise transferred any claim it may have against the other Party. The releasing Party shall hold harmless the other Party from any claims arising out of or relating to any such assignment or transfer, or for any such purported or attempted assignment or transfer, of any claims or other matters released herein.

4.4. <u>Informed Consent</u>. Each Party represents and warrants that it has read and understands the entire Agreement and has had the opportunity to consult with legal counsel concerning its terms and conditions.

5. <u>General Provisions</u>

   5.1. <u>Prohibited Statements</u>. Julep shall not state (a) that it was the first to use female names to name or refer to nail polish products; or (b) that its nail polish naming system is unique. Further, neither Party shall make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage, reflect adversely upon, or in any way criticize the other Party's personnel, business, reputation, goods, services, practices, or conduct.

   5.2. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the Parties thereto, their affiliates, successors, and assigns.

   5.3. <u>Costs</u>. Other than the payment required by paragraph 1.1 above, the Parties will bear their own costs and expenses, including attorneys' fees, associated with the Action and with the negotiation and execution of this Agreement.

   5.4. <u>Severability</u>. Except as where specifically provided, the provisions in this Agreement are severable, and if any one or more such provisions

shall be determined to be illegal or otherwise unenforceable, in whole or in part, the remaining provisions or portions of this Agreement shall nevertheless be binding on and enforceable by and between the Parties.

5.5. <u>No Construction Against Drafters</u>. This Agreement result from arms' length negotiations between the Parties and their respective legal counsel, and each Party acknowledges that it has had the opportunity to negotiate modifications to the language of the Agreement. Accordingly, each Party agrees that in any dispute regarding the interpretation or construction of this Agreement, no statutory, common law or other presumption shall operate in favor or against, nor shall this Agreement be strictly construed in favor or against, any Party hereto by virtue of its role in drafting or not drafting the terms and conditions set forth herein.

5.6. <u>Enforcement</u>. The Court before which the Action was previously pending shall have continuing jurisdiction to enforce the terms of this Agreement and to resolve any dispute between the Parties arising under or in connection with this Agreement.

5.7. <u>Paragraph Headings</u>. The paragraph headings of this Agreement are inserted only for convenience and in no way define, limit, or describe the scope or intent of this Agreement nor affect its terms and provisions.

5.8. <u>Modification</u>. Any modification of this Agreement must be in writing and signed by all Parties. No oral modifications shall be effective to vary or alter the terms of this Agreement.

5.9. <u>Entire Agreement</u>. This Agreement constitutes and represents the entire agreement of the Parties hereto with respect to the subject matter hereof, and all other prior agreements, covenants, promises, and conditions, verbal or written, between the Parties are superseded and incorporated by this written Agreement.

5.10. <u>Non-Transferable</u>. Julep has no right to sell, assign, transfer, license, or grant to any other person or entity any rights under this Agreement without the express written consent of Zoya which consent shall not be unreasonably withheld

5.11. <u>Counterparts and Effective Date</u>. This Agreement may be executed in counterparts by facsimile or scanned electronic copy, all of which together shall constitute one agreement binding on each of the Parties hereto notwithstanding that each such Party shall not have signed the same counterpart.

5.12. <u>Time is of the Essence</u>. With respect to this Agreement and the duties, obligations, and performance owed hereunder, the Parties mutually agree that time is of the essence.

5.13. <u>Recitals</u>. The recitals to this Agreement are hereby incorporated and made a part of the enforceable terms of the Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their duly authorized representatives on the dates indicated.

For:

Zoya Company and
Art of Beauty, Inc.

_____
(Signature)

_Leonid Reyes_____
(Printed Name)

_Vice President_____
(Printed Title)

_5/30/2012_____
(Date)

For:

Julep Nail Parlor Company

_____
(Signature)

_Jane Park_____
(Printed Name)

_President & CEO___
(Printed Title)

_5/30/2012_____
(Date)

{3764466}  6

## Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Zoya Company, *et al.*, | ) | Case No. 1:11-cv-1702 |
| | ) | |
| Plaintiffs, | ) | Judge Polster |
| | ) | |
| vs. | ) | |
| | ) | Stipulated Withdrawal Of Opposing |
| Julep Nail Parlor Company, | ) | Motions To Enforce Settlement |
| | ) | |
| Defendant. | ) | |

The parties, Zoya Company, Art of Beauty Inc., and Julep Nail Parlor Company, have resolved their settlement dispute and therefore stipulate to the withdrawal of: (i) Plaintiffs' Motion To Enforce Settlement (ECF # 15); and (ii) Defendant's Cross-Motion To Enforce Settlement And Bifurcate Enforcement Dispute (ECF # 16). If the Court chooses to act on those motions, it should dismiss them as moot.

_____
David B. Cupar (OH 0071622)
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
t 216.348.5400
f 216.348.5474
dcupar@mcdonaldhopkins.com
mcavanagh@mcdonaldhopkins.com

*Counsel for Plaintiffs*

_____
GEORGE H. CARR (0069372)
MARK D. THOMPSON (0086002)
GALLAGHER SHARP
Sixth Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115
(216) 241-5310
Fax: (216) 241-1608
gcarr@gallaghersharp.com
mthompson@gallaghersharp.com

*Counsel for Defendant*